IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
MCALLEN DIVISION

| | |
|---|---|
| **KEITH MERCHANT,** <br> **PLAINTIFF** | **Civil Action No.**    7:25-CV-545 |
| **V.** | **DEMAND FOR JURY TRIAL** |
| **HARBOR FREIGHT TOOLS USA, INC.; HARBOR FREIGHT TOOLS CORPORATE, LLC; and HARBOR FREIGHT TOOLS TEXAS, L.P.** <br> **DEFENDANTS** | |

**PLAINTIFF'S ORIGINAL PETITION**

**TO THE HONORABLE UNITED STATES DISTRICT COURT JUDGE:**

COMES NOW, PLAINTIFF KEITH MERCHANT, hereinafter referred to by name or as "Plaintiff," and by and through undersigned counsel, and respectfully files this Original Petition against Defendant HARBOR FREIGHT TOOLS USA, INC., HARBOR FREIGHT TOOLS CORPORATE, LLC, and HABOR FREIGHT TOOLS TEXAS, L.P., hereinafter referred to by names or as "Defendants," and would respectfully show unto the Court as follows:

**I.
JURISDICTION AND VENUE**

1. This is a products liability and negligence action in which the Court has original subject-matter jurisdiction under 28 U.S.C § 1332(a) because there is complete diversity of citizenship and the damages exceed $75,000.

2. Venue is proper in this Court pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claim occurred in Hidalgo County, which is within this judicial district.

## II.
## PARTIES

3. Plaintiff KEITH MERCHANT is a citizen of Texas.

4. Defendant HARBOR FREIGHT TOOLS USA, INC. (hereinafter HFT, INC.) is a foreign for-profit corporation incorporated under the laws of the State of Delaware authorized to and doing business in the State of Texas, and more particularly in Hidalgo County, Texas, with its principal office located at 3491 Mission Oaks Blvd, Camarillo, California, 93012. More specifically, HFT, INC. is engaged in the business of designing, manufacturing, testing, assembling, marketing, distributing, and/or selling various tools and products into and throughout the United States and specifically Texas in a targeted, systematic, and continuous manner.

5. HFT, INC. may be served with process by and through its registered agent Corporate Creations Network, Inc., at 2595 N. Dallas Pkwy, Ste. 350, Frisco, TX, 75034.

6. Defendant HARBOR FREIGHT TOOLS CORPORATE, LLC. (hereinafter HFT, LLC) is a foreign Limited Liability Company authorized to and doing business in the State of Texas, and more particularly in Hidalgo County, Texas, with its principal office located at 2667 Agoura Road, Calabasas, California, 91302. More specifically, HFT LLC is engaged in the business of designing, manufacturing, testing, assembling, marketing, distributing, and/or selling various tools and products into and throughout the United States and specifically Texas in a targeted, systematic, and continuous manner.

7. HFT LLC may be served with process by and through its registered agent Corporate Creations Network, Inc., at 2595 N. Dallas Pkwy, Ste. 350, Frisco, TX, 75034.

8. Defendant HARBOR FREIGHT TOOLS TEXAS, L.P. (hereinafter HFT, L.P.) is a foreign Limited Partnership authorized to and doing business in the State of Texas, and more particularly

in Hidalgo County, Texas, with its principal office located at 2667 Agoura Road, Calabasas, California, 91302. More specifically, HFT LLC is engaged in the business of designing, manufacturing, testing, assembling, marketing, distributing, and/or selling various tools and products into and throughout the United States and specifically Texas in a targeted, systematic, and continuous manner.

9.     HFT LLC may be served with process by and through its registered agent Corporate Creations Network, Inc., at 2595 N. Dallas Pkwy, Ste. 350, Frisco, TX, 75034.

10.    The Defendant entities have purposefully intertwined their operations to the point they are inextricable from one another such that one's contacts with Texas is a contact for all. Thus, HFT, INC., HFT, LLC, and HFT, L.P. are hereinafter referred to collectively as the "Harbor Freight Defendants."

### III.
### FACTUAL BACKGROUND

11.    At all times material hereto, and on December 1, 2023, the Harbor Freight Defendants were in the business of selling a product known as the Predator 459 cc Engine.

12.    At all time material hereto, and on November 24, 2023, a Predator 459 cc Engine was sold by the Harbor Freight Defendants to Plaintiff at its Harbor Freight Tools Store located at 2716 South Expressway 281, Edinburg, Texas 78542.

13.    On or about December 1, 2023, the Plaintiff, hooked the Predator 459 cc Engine to his commercial spray foam applicator for use in his commercial business. After using the spray foam applicator for a period of time, Plaintiff turned off the applicator and the Predator 459 cc Engine to check the volume of gas by removing the gas cap located at the top of said generator. When he removed the cap to check the volume of gas, the fumes ignited causing burns to his face and right arm.

## VI.
## CAUSE(S) OF ACTION AS TO DEFENDANTS

*A. Count One: Strict Liability and Defective Design/Manufacture/Failure to Warn*

14.     Plaintiff hereby incorporates by reference the allegations contained in the proceeding paragraphs of this Petition.

15.     At all times material to this action, the Harbor Freight Defendants were in the business of designing, manufacturing, testing, engineering, assembling, marketing, selling, supplying, and/or distributing engines for use in Texas, and throughout the United States, including the subject Predator 459 cc Engine.

16.     The Harbor Freight Defendants designed, manufactured, tested, engineered, assembled, marketed, supplied, distributed, and/or sold the Predator 459 cc Engine that was involved in the incident that left Plaintiff with serious injuries.

17.     The Predator 459 cc Engine was defective and unreasonably dangerous for its intended use.

18.     The Predator 459 cc Engine was defective at the time it left the Harbor Freight Defendants control.

19.     Reasonable consumers would not have been aware of the defective condition of the Predator 459 cc Engine.

20.     Plaintiff was not aware of the defects in the subject Predator 459 cc Engine.

21.     It was entirely foreseeable and well-known by the Harbor Freight Defendants that incidents involving its engines, such as occurred herein, would on occasion take place during the normal and ordinary use of said Predator 459 cc Engine.

22.     Moreover, the Harbor Freight Defendants were well aware at the time they marketed and sold the subject Predator 459 cc Engine that the fumes and/or vapors would ignite if the engine

gas cap was removed to check the fuel level. The Harbor Freight Defendants failed to adequately warn users of this risk or to adequately instruct consumers.

22. The injuries complained of herein occurred because the Predator 459 cc Engine in question was not reasonably fit for unintended, but clearly foreseeable, incidents. The Predator 459 cc Engine in question was unreasonably dangerous in the event it should be involved in an incident such as occurred herein.

23. The Harbor Freight Defendants, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, tested, engineered, assembled, marketed, supplied, distributed, and/or sold said Predator 459 cc Engine in question.

24. As detailed herein, the Predator 459 cc Engine contains and/or the Harbor Freight Defendants have committed either design, manufacturing, testing, assembly, marketing, and/or distribution defects.

25. The Harbor Freight Defendants either knew or should have known of at least one safer alternative design which would have prevented the serious injuries to Plaintiff.

26. In addition to the foregoing, the Harbor Freight Defendants, either alone or in conjunction with some other individual(s) and/or entity(ies), designed, manufactured, tested, assembled, marketed, and/or distributed said massage gun in question to be unreasonably dangerous and defective within the meaning of Section 402(A) RESTATEMENT (SECOND) TORTS, in that the Predator 459 cc Engine was unreasonably dangerous as designed, manufactured, tested, assembled, marketed, and/or distributed because the Harbor Freight Defendants failed to adequately warn the user or consumer concerning the risks associated with igniting fumes and/or vapors when the gas cap was removed.

27. The subject Predator 459 cc Engine was defectively marketed because the Harbor Freight Defendants knew or should have known of a potential risk of enhanced and/or serious injury to users or consumers resulting from the ignition of fumes and/or vapors when the gas cap was removed, but marketed the Predator 459 cc Engine without any adequate warning of the danger or providing any instructions for its safe use given this enhanced/serious risk of injury. The risk of harm associated with the subject Predator 459 cc Engine arises from its intended or reasonably anticipated use. The Harbor Freight Defendants actually knew or could have reasonably foreseen the risk of harm at the time the Predator 459 cc Engine was marketed and sold, and the absence of any adequate warnings or instructions rendered the massage gun unreasonably dangerous to Plaintiff.

28. The foregoing manufacturing, design, and/or marketing defect(s) were a producing and/or proximate cause of Plaintiff's injuries and damages.

### B. Count Two: Negligence

29. Plaintiff hereby incorporates by reference the allegations contained in the preceding paragraphs of this Petition.

30. In addition to and/or in the alternative to the product liability claims asserted herein, the Harbor Freight Defendants were negligent in the design, manufacture, testing, assembly, marketing, and/or distribution of the Predator 459 cc Engine in question.

31. Companies that are in the business of designing, testing, manufacturing, marketing, distributing and selling products are never allowed to needlessly endanger consumers.

32. Nothing should be more important to companies that design, manufacture, test and sell products than consumer safety.

33. Because nothing should be more important than consumer safety, companies that design, manufacture, and sell products should always analyze the product for potential hazards or defects – at every stage of production.

34. In fact, for companies like the Harbor Freight Defendants, in designing a Predator 459 cc Engine, efforts should be made by manufacturers to identify potential risks, hazards, and/or dangers that can lead to serious injury or death.

35. Once potential risks, hazards, and/or dangers are identified, then the potential risks, hazards, or dangers should be eliminated if possible.

36. If the potential risks, hazards, and/or dangers can't be eliminated, then they should be guarded against.

37. If the potential risks, hazards, and/or dangers can't be eliminated or guarded against, they should at least be warned about.

38. A company that does not conduct a proper engineering analysis that would help it to identify potential risk, hazards, and/or dangers that could seriously injure someone is negligent.

39. The Harbor Freight Defendants owed a duty to use reasonable care in the design, manufacture, testing, assembly, marketing, and/or distribution of the subject Predator 459 cc Engine.

40. The Harbor Freight Defendants failed to use reasonable care when it designed, manufactured, tested, assembled, marketed, distributed, and/or sold the subject Predator 459 cc Engine, and consequently put a product on the market that was unreasonably dangerous for its intended or reasonably anticipated use as discussed herein.

41. The Harbor Freight Defendants had a duty to conduct a proper engineering analysis and to conduct proper testing that would help it to identify potential risks, hazards, and/or dangers that could seriously injure someone. The Harbor Freight Defendants breached said duty.

42.     With respect to the subject Predator 459 cc Engine, based upon information and/or belief, the subject Predator 459 cc Engine was not properly tested for the type of situation that occurred in this case to determine what countermeasures or designs were necessary to adequately protect consumers from being harmed.

43.     As noted earlier, most (if not all) engineering associations in the United States (and around the world) have a code of ethics. The number 1 fundamental canon of ethics for almost all engineers is to "hold paramount the safety, health, and welfare of the public."

44.     Accordingly, since paramount means "superior to all others", all Predator engine engineers have to hold the safety, health, and welfare of the public as their highest considerations when they design engines such as the subject Predator 459 cc Engine.

45.     With respect to the subject Predator 459 cc Engine, based upon information and/or belief, the subject Predator 459 cc Engine was not subjected to rigorous engineering analysis, focus groups, evaluations, or research on how to warn, advise, or instruct users regarding the Predator 459 cc Engine.

46.     With respect to the subject Predator 459 cc Engine, based upon information and/or belief, the subject Predator 459 cc Engine lacked any adequate warnings to adequately inform consumers about what might occur.

47.     The foregoing acts and/or omissions, defects, and/or negligence of the Harbor Freight Defendants were the producing, direct, and/or proximate cause of the injuries to Plaintiff and Plaintiff's damages.

## V.
## DAMAGES TO PLAINTIFF

48. As a result of the acts and/or omissions of one or more of the Defendants, Plaintiff has become obligated in the past and in all likelihood into the future to pay medical expenses as a result of his serious injuries.

49. As a result of the acts and/or omissions of one or more of the Defendants, Plaintiff will endure pain and suffering, physical impairment, disfigurement, mental anguish, emotional distress, humiliation, and interference with her daily activities and reduced capacity to enjoy life in the past as well as in the future as a result of his injuries.

50. As a result of the acts and/or omission of one or more of the Defendants, Plaintiff has lost wages in the past and will likely have diminished earning capacity in the future.

51. The above and foregoing acts and/or omissions of one or more of the Defendants, resulting in the serious injuries to Plaintiff, have caused actual damages to the Plaintiff in excess of the minimum jurisdictional limits of this Court.

## VI.
## JURY DEMAND

52 Plaintiff requests a jury trial according to the Texas Rules of Civil Procedure, and tenders the appropriate jury fee.

## VII.
## RESERVATION OF RIGHTS

53. The above allegations against the Harbor Freight Defendants are made acknowledging that investigation and discovery, although undertaken, are continuing in this matter. As further investigation and discovery are conducted, additional facts may be uncovered that necessitate further, additional, and/or different allegations, including the potential of adding additional parties to

the case or dismissing parties from the case. The right to do so, under Texas law, is expressly reserved.

## VIII.
## CONCLUSION AND PRAYER

For the reasons presented herein, the Plaintiff prays that Defendants be cited to appear and answer, and that upon a final trial of this cause, Plaintiff recovers judgment against Defendants for:

   a.  actual damages;
   b.  economic and non-economic damages;
   a.  prejudgment and post-judgment interest at the maximum legal rate provided by law;
   c.  costs of suit; and
   d.  all other relief, general and special, to which the Plaintiff is entitled to at law and/or in equity, and/or which the Court deems proper.

RESPECTFULLY SUBMITTED,

HERRMAN & HERRMAN, P.L.L.C.
THE HERRMAN BUILDING
1201 THIRD STREET
CORPUS CHRISTI, TEXAS 78404
PHONE: (361) 882-4357
FAX: (361) 883-7957

BY:   /S/ GEORGE A. DEVERA
      GEORGE A. DEVERA
      FEDERAL ID NO. 1059244
      STATE BAR NO. 24048431
      Email: gdevera@herrmanandherrman.com
      *litigation@herrmanandherrman.com
      ATTORNEY FOR PLAINTIFFS